### UNITED STATES v. PORT OF PORTLAND.

(District Court, D. Oregon. October 12, 1906.)

#### No. 4,856.

COLLISION—LIABILITY IN PERSONAM OF MUNICIPAL CORPORATION.

The Port of Portland, a municipal corporation created by the state of Oregon to which are delegated the powers of the state over the navigable waters of the Columbia and Willamette rivers at the city of Portland, and between there and the sea, with authority to improve the same, and to that end to make contracts. employ men, and do all other acts necessary or convenient, is liable in damages by the maritime law for a collision caused by the negligence or fault of its employés in charge of one of its vessels employed in performing the duties for which it was created.

In Admiralty. On exceptions to libel.

William C. Bristol, U. S. Atty.
Williams, Wood & Linthicum, for respondent.

WOLVERTON, District Judge. This is a proceeding, by libel in personam, by the general government against the port of Portland, whereby it seeks to recover for damages sustained by reason of the alleged negligent navigation, while upon the Columbia river, of the

tug, John McCraken, and the dredge, Columbia, as tug and tow, on the part of the respondent and the officers and crew in charge of such vessels, whereby they collided with the lighthouse tender Manzanita, a vessel of which the government is owner. Exceptions are interposed to the libel, for the reason "that it appears therefrom that respondent is a public corporation created by and under the laws of the state of Oregon and that the dredge, Columbia, and tug, John McCraken, are the property of the respondent, and were owned and operated by it in its public capacity and that it, as such public corporation of the state of Oregon, is not liable for torts committed by its employés while operating any of its property in such public capacity."

This presents the question for consideration. The port of Portland was created by act of the Legislative Assembly of the state of Oregon, with power to make all contracts, to hold, receive and dispose of real and personal property, and to do all other acts and things which might be requisite, necessary, or convenient in carrying out the objects of the corporation, to sue and be sued, plead and be impleaded, and to improve the channel of the Willamette and Columbia rivers between Portland and the sea in aid of shipping and commerce, and with full authority, to the same extent that the state might enter into the exercise thereof, from time to time to make, establish, change, modify, or abolish such rules and regulations for the use or navigation of the Willamette and Columbia rivers between Portland and the sea, or the placing of obstructions therein, or the removal of obstructions therefrom, as it might deem convenient, requisite, or necessary, or in the best interests of the maritime, shipping, or commercial interests of the said port of Portland, and, to that end, was duly authorized to employ such engineers, superintendents, mechanics, clerks, and other persons as it might find requisite or convenient in carrying on its work, or any part thereof, and at such rate of remuneration as it might deem just. Sections 4635–4638, 4661, B. & C. Comp. As was said in the case of the same title as this, which was instituted as a proceeding in rem to recover for the same alleged negligence (D. C.) 145 Fed. 705:

"The constitutionality of the act was brought to a test in the case of Cook v. Port of Portland, 20 Or. 580, 27 Pac. 263, 13 L. R. A. 533. It is there declared in effect that the port of Portland is a municipal corporation, and that its purposes and powers are 'all public, political, or governmental,' and that the corporation, and the commissioners who exercise its powers, are as well the agents of the state, delegated to exercise a part of its prerogatives. 'The sole object of the corporation,' says Mr. Justice Bean, speaking for the court, 'is to so improve the Willamette and Columbia rivers at the city of Portland and between that point and the sea, as to create and maintain a ship channel of a specified depth, and, for this purpose, it is given full power over these rivers, so far as the state can grant the same.'"

In so far, therefore, as the state had the power and authority in the premises; that is, over the navigable waters of the Columbia river and the channel thereof, the Legislature has constituted the port of Portland, as it were, an arm of the state, to perform its functions in the particulars specified in the act creating the municipality. But, however this may be, the whole contention, it seems to me, is precluded in

all its important features by the case of Workman v. New York City, Mayor, etc., 179 U. S. 552, 21 Sup. Ct. 212, 45 L. Ed. 314. The primary position there considered is stated by Mr. Justice White, who announced the prevailing opinion of the court as follows:

"Although by the maritime law the duty rests upon courts of admiralty to afford redress for every injury to person or property where the subject-matter is within the cognizance of such courts and when the wrongdoer is amenable to process, nevertheless the admiralty courts must deny all relief whenever redress for a wrong would not be afforded by the local law of a particular state or the course of decisions therein. And this, not because, by the rule prevailing in the state, the wrongdoer is not generally responsible and usually subject to process of courts of justice, but because in the commission of a particular act causing direct injury to a person or property, it is considered. by the local decisions, that the wrongdoer is endowed with all the attributes of sovereignty, and, therefore, as to injuries by it done to others in the assumed sovereign character, courts are unable to administer justice by affording redress for the wrong inflicted."

It was answered by the eminent jurist that the premise would result in the practical destruction of a uniform maritime law, designed and suited to give relief to every character of maritime tort where the wrongdoer was subject to the jurisdiction of admiralty, and. therefore, that it could not be maintained. It was next considered whether, under the maritime law, the city of New York was liable for an injury negligently inflicted by one of its fire boats, and determined that it was. The conditions recounted were that the fire department of the city was an integral branch of the local administration and government of the city; that the ministerial officers who directed the affairs of the department were selected and paid by the city; that all the expenses of the department were to be borne by the city, which was bound by all contracts made for such purpose; that all the property of the department, including the fire boat, belonged to the city; and that the city was rendered liable by charter, in case of an authorized destruction on land of property of individuals to prevent the spread of conflagrations; by reason whereof it was concluded that the relation of master and servant existed between the city and those in charge of the fire boat; that especial relation being established, and the city being the owner of the offending vessel committing the tort, it was further concluded that in maritime jurisprudence the city was responsible in damages to the injured party under the rule of respondeat superior. This was adjudged to be so, notwithstanding it is the uniform and settled rule, sanctioned by the courts of last resort in every state in the Union that has passed upon the question, that an action is not maintainable against a municipal corporation for any injury to person or property caused by the negligence of the members of its fire department acting in the line of their duty. See dissenting opinion by Mr. Justice Gray, 179 U. S. 575, 576, 21 Sup. Ct. 220 (45 L. Ed. 314). And, further, as to the rule just stated, Wagner v. Portland, 40 Or. 389, 60 Pac. 985, 67 Pac. 300.

Now, if such is the case by judicial enunciation in maritime law, that the officers and agents of the fire department of an incorporated city or municipality are the servants of the municipality, as it respects the relation of master and servant, for whose acts of negligence the master is liable, there can be but one result as applied to the present contro-

versy. The master and officers of the tug, John McCraken, and dredge, Columbia, must be considered the servants of the port of Portland, for whose acts it is liable. The municipality was authorized and empowered to employ them, to pay them for their services, and to discharge them in manner best suited to the judgment and discretion of its commissioners. All the expenses of carrying on the project were and are to be borne by it, and all the property employed in the service, including the offending vessels, belonged to it. So that the essential conditions there assigned for legal responsibility for negligence of the servant are here present. But the present is even a stronger case, because the responsibility of the port of Portland is more nearly analogous to that of an incorporated city, having the control and charged with the supervision and care of its public streets. Such a municipality is liable within the federal jurisdiction, as well as in other courts, for dereliction in duty in permitting an unnecessary and dangerous obstruction or a defect to exist in such highways, whereby injury ensues. City of Chicago v. Robbins, 2 Black, 418, 17 L. Ed. 298; Robbins v. City of Chicago, 4 Wall. 657, 18 L. Ed. 427; McAllister v. City of Albany, 18 Or. 426, 23 Pac. 845.

If negligent in manner as alleged in the libel, the tug and tow might be regarded as a dangerous, and perhaps an unlawful, obstruction in the navigable channel of the Columbia river; so that in view of the closer analogy to the case of a city as it respects the repair of its streets, the port of Portland would then be amenable upon the same principle. But in any event it is clear that under the authority of Workman v. New York City, supra, the respondent is liable in damages in maritime law for the alleged negligence conducing to the collision complained of.

It follows, therefore, that the exceptions should be overruled; and it is so ordered.